DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

May, 1879

---

ABRAHAM V. DE WITT AND OTHERS, AS EXECUTORS, ETC., OF JOHN T. COOPER, DECEASED, PLAINTIFFS, *v.* ANGELICA S. COOPER AND OTHERS, DEFENDANTS.

*What constitutes a tenancy for life — who bound to make ordinary repairs and pay taxes.*

A testator, by his will, gave to his widow his dwelling-house and stable, and a country seat, so long as she should use and occupy the same, and, after giving certain legacies and annuities, gave, devised and bequeathed "all my (his) estate, both real and personal, whatsoever and wheresoever situated" (but subject to the payment of the said legacies and annuities), to his trustees, "in trust to receive the rents, issues and profits thereof; and after paying all taxes, assessments and repairs, insurance premiums and the expenses of executing this trust," directed them to pay an annuity of $10,000 to his widow, and apply the surplus as therein otherwise provided. His trustees were also authorized to make alterations and repairs "to any of my (his) property," and to repair or rebuild any that might be destroyed by fire or the elements.

*Held,* that the gift of "all my estate, both real and personal," to the trustees covered only the property not otherwise expressly disposed of, and did not include the dwelling-house and country seat, and that the provision requiring the trustees to pay the taxes, etc., did not apply to them.

That the widow had an estate for life in the dwelling-house and country seat, and was bound to make ordinary repairs thereto and pay the taxes thereon.

SUBMISSION of a controversy, without action, under section 1279 of the Code of Civil Procedure, upon an agreed state of facts touching the construction of certain clauses in the will of John Taylor Cooper, deceased.

*Samuel Hand* and *C. T. F. Spoor*, for the plaintiffs.

*R. W. Peckham*, for the defendant Angelica S. Cooper.

BOARDMAN, J. :

By the terms of Mr. Cooper's will he first gave to his wife a life estate in his Albany dwelling-house and his country house, known as Guy park. In a later clause of his will he gave all his estate, real and personal, whatsoever and wheresoever situated, to his trustees therein named, to receive the rents, issues and profits thereof, and after paying all taxes, assessments and repairs, insurance premiums, and the expenses of executing this trust, and said legacies and annuities as above given, to apply the same as follows : $7,000 to his wife annually, and " the balance of said net rents, issues and profits " to other persons named. Mrs. Cooper, by her counsel, contends that this gift of all his real and personal estate includes the two residences, out of which a life estate is carved for her, and, as a consequence, that the trustees under the will are bound to pay all taxes, assessments, repairs and insurance premiums upon the two residences aforesaid, owned by her. It is conceded that, by the general rule, the tenant for life must pay the ordinary taxes and repairs. If any other rule shall be applied in this case, it will be due to express directions of the testator, by which it shall be indicated it was his intent that Mrs. Cooper should be exempted from such payments, and that they should be paid out of the residue of his estate by his trustees. If the clause by which all his estate is given to trustees is so repugnant to the prior clause by which a life estate is given to Mrs. Cooper of the two residences and lots, then the life estate cannot stand. But this rule is never applied, except when the two clauses are irreconcilable. In this case they are not even inconsistent, because Mrs. Cooper's life estate is referred to and, in effect, excepted from the gift of all his estate.

The plain and evident intent of the will is to give Mrs. Cooper an ordinary life estate in the city house and lot and in the country residence, and that all the rest of his real estate shall go to the trustees, out of which, with the personal property, rents, issues and profits shall be derived for the payment of legacies and

annuities. If all the estate were devised to the trustees, Mrs. Cooper would have no life estate, and the trustees would be required to lease the two residences so as to obtain therefor the income which they, as trustees, are to receive and apply under the terms of the devise to them. The testator evidently intended to give to his trustees in trust all of his real estate, not thereinbefore disposed of, and that intent is plainly enough expressed in the will. Whether that gives the trustees any estate or interest in the city and country house and lands given to Mrs. Cooper for life, or whether as to the remainder in them he died intestate, it is not now necessary to decide.

Of the property which the trustees became vested under the will, they had the management and control for the purpose of deriving rents, issues and profits. But of Mrs. Cooper's life estates and of the lands from which such life estates were taken, the trustees could have no control during her life, and hence a direction to apply the rents, etc., of such lands would be absurd.

The subsequent direction of the testator, in regard to payment of taxes, observes the same distinction. It is a direction to the trustees to pay the taxes on the property given to them by the will, in a particular manner, by specified times. Neither that nor any other clause in the will clearly indicates an intention of the testator, that Mrs. Cooper should not be required to pay taxes and make repairs in the ordinary manner required by law of life tenants. It will not suffice that a plausible construction of words and sentences might lead to such a conclusion, but the intent must be reasonably certain, and the language clear enough to justify a disregard of the general rule. (*Lawrence* v. *Holden*, 3 Bradf., 142.)

We conclude, therefore, that Mrs. Cooper is legally bound to pay all ordinary taxes and make all ordinary repairs. As to extraordinary assessments and permanent improvements the burden should doubtless be apportioned between the tenant for life and the remainderman. (*Peck* v. *Sherwood*, 56 N. Y., 615 ; *Cairns* v. *Chabert*, 3 Edw. Ch., 312.) The same is true in regard to insurance, though no reason is seen why each party may not insure on his or her own account such interest as he or she may possess, or leave the same uninsured at pleasure.

Judgment is ordered for a construction of the will in accordance with the foregoing opinion, with costs of both parties to be paid out of the estate ; the form of judgment, in case of disagreement, to be settled by BOARDMAN, J.

BOCKES, J. concurred ; LEARNED, P. J., not acting.

BOCKES, J.:

On reading the will and codicils as an entirety, it appears very manifestly, I think, that the testator intended to place Mrs. Cooper, on and after his decease, in a position entirely independent of the executors and trustees, as to her right to use and enjoy the property given to her, including the $10,000 annuity. Evidently it was intended that she should be in no way dependent upon them, or subject at all to their supervision or dictation as to such property. So she was given an annuity of $10,000 absolutely, to be paid to her in quarter-yearly payments. This aggregate sum was to be her own property, to be used, employed and enjoyed by her in accordance with her own wishes and purposes. The executors and trustees had no charge over it or duty in regard to it, except to make payment of it as directed in quarter-yearly payments.

The testator also gave Mrs. Cooper the coach horses, coach, barouche, double sleigh, and the harness and equipage thereto belonging. This property, like the annuity, became her absolute property ; and it may be here noted that he also gave her, absolutely, script for stock or bonds to the amount of $5,000. He also gave her his household furniture, silverware, platedware, library, statuary, pictures, prints and household effects, of every kind, for and during her life. He also gave her the dwelling-house No. 134, on State street, Albany, with the stables and coach house in the rear, so long as she should occupy the premises ; and also his country seat " Guy park," with the household furniture, etc., for life, provided she should use and occupy the same as a country seat.

The devises and bequests to Mrs. Cooper were expressed in clear and apt words to give her absolute and unqualified rights of property. She was vested with the entire title to part, and with what was in law, at her election, a life estate in the remainder of

what was bestowed upon her by the will. There was no trust estate created to be held by a trustee for her benefit. Whatever rights of property were devised and bequeathed to her were given absolutely, for her sole use and subject only to her control.

Nor is there anything in other or subsequent provisions of the will which works any change, as regards Mrs. Cooper's rights of property thereunder. The original will, with the codicils, must be read together as one entire instrument. Then let the codicils be incorporated into the original will preceding that portion of it which creates and declares the trust, and thus read, it will be seen that the testator gave the use of two pieces of real property to Mrs. Cooper (dependent upon her election as to occupancy); also an annuity of $10,000 ; and also stock or bonds to the amount of $5,000. He also gave several annuities to other persons, and made some bequests of money and specific articles of property ; all, however, being absolute and unqualified gifts. Thus, as regards the two pieces of real property, there was carved out an estate to Mrs. Cooper for life, at her election as to occupancy. So after making the provisions above referred to, the testator disposed of the remainder of his property, comprising the great bulk of it, as follows : " I give, devise and bequeath all my estate, both real and personal, whatsoever and wheresoever situated, * * * *but subject* to the payment of the above annuities, * * * and * * * legacies, if not lapsed * * * *and subject to the use above given to my wife,* unto " (the trustees named) " in trust to receive the rents, issues and profits thereof ; " then follow specified directions as to the application of them, and as to the ultimate disposition of the trust estate. It seems quite plain, I think, that the testator intended to preserve to Mrs. Cooper her rights of property, separate and distinct from the body of his estate, which was given in trust to the trustees named. Such is the fair and true import of the language employed by him in declaring his purpose in the will.

Mrs. Cooper then was life tenant of the two pieces of real property, the use of which was devised to her, dependent upon her election to occupy them. Having elected to occupy, and accepted the use of the property, the burden of ordinary taxation and needful repairs for its present use must fall upon her. Such

is the settled doctrine of the law, in the absence of express direction casting the burden elsewhere. (*Parkinson* v. *Parkinson*, 2 Bradf., 77–79; *Lawrence* v. *Holden*, 3 id., 142; *Cairns* v. *Chabert*, 3 Edw. Ch., 312; *Peck* v. *Sherwood*, 56 N. Y., 615; *Lansing* v. *Lansing*, 45 Barb., 182; *Moseley* v. *Marshall*, 22 N. Y., 200; *Deraismes* v. *Deraismes*, 72 id., 154.) These cases hold that there must be some express provision to disturb this settled rule. We do not find in Mr. Cooper's will any declared purpose or intent to cast the burden of taxation and repairs, as regards the estate devised to Mrs. Cooper, upon the trust estate, and not upon the life tenant. As before stated the testator gave Mrs. Cooper absolute rights of property. It was the remainder of his property, other than that devised to Mrs. Cooper and bequeathed absolutely, that he put in trust in the hands of trustees. As to this trust property the trustees were to receive the rents, issues and profits thereof, and after paying all taxes, assessments, repairs and insurance premiums, etc., then to apply the same as there directed. The testator here had reference to the trust property. From the rents, issues and profits thereof the trustees were to satisfy the taxes and assessments to be levied thereon, and the expenses for repairs and insurance which might be necessary for its protection. Not only is there no express provision changing the rule of law above stated, but it is quite manifest that the estate given Mrs. Cooper was not intended to be under the care or supervision of the trustees for any purpose whatever. True, the testator authorized his trustees to lease " *my real estate*," * * * " and to make alterations and repairs to any of *my property* as to them may seem meet, and to repair and rebuild " in case of destruction or injury by the elements, but evidently such provision had reference only to the property held in trust. So, too, when the testator directed that " all taxes " on his city property should be paid prior to the first of January, so that " my estate " may have the benefit of the deductions allowed for prompt payment, and imposed this duty on his trustees, he evidently intended all taxes assessed upon the trust property. Certainly there was no duty expressly cast upon the trustees, save as to the property put in trust in their hands.

In conclusion, we are of the opinion that the claims of Mrs. Cooper, to be relieved from the taxes assessed upon the two pieces of real estate, the use whereof was given to her by the will, and from expenses for necessary repairs thereon for its present use, are not well founded; and as regards the question as to premiums for insurance, unless she can arrange with the trustees for an apportionment of the sum necessary to meet that expense, she must, if she desires insurance, secure it on her own interest in the property.

The plaintiffs, executors and trustees are entitled to judgment in their favor on the questions submitted to the court, and all the parties, plaintiffs and defendants should have their taxable costs from the estate.

BOARDMAN, J., concurred.

Judgment for plaintiffs in accordance with opinion; costs of both parties to be paid out of estate; order to be settled by BOARDMAN, J.